UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEPHANIE JONES,                )
                                )
        Plaintiff,               )
                                )      CIVIL ACTION NO.
VS.                              )
                                )      3:07-CV-1145-G
FIRST HORIZON NATIONAL           )
CORPORATION, ET AL.,             )              **ECF**
                                )
        Defendants.              )

# MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants First Horizon National Corporation, First Tennessee Bank National Association, and First Horizon Home Loans (collectively, "First Horizon") for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND

First Horizon Home Loan Corporation is a subsidiary of First Tennessee Bank National Association, whose parent company is First Horizon National Corporation. Plaintiff's Amended Complaint ("Complaint") ¶ 8. Plaintiff Stephanie Jones

("Jones"), an African-American female, was employed by First Horizon from March 28, 2005 through November 1, 2006. *Id*. ¶¶ 1, 10.

On March 28, 2005, Jones began work at First Horizon's corporate security department in Irving, Texas, as an Investigator II. *Id*. ¶ 15. Jones's direct supervisor was David Scaff ("Scaff"), a Caucasian male and Senior Investigator. *Id*. ¶ 17; Affidavit of David Scaff ("Scaff Affidavit") ¶ 2, *attached to* Appendix in Support of Defendants' Motion for Summary Judgment ("Appendix to Motion") at 17-23. Sheila Bramlitt ("Bramlitt"), Senior Vice President/Manager of First Horizon's Corporate Security Department and Scaff's supervisor, approved Scaff's recommendation to hire Jones. Affidavit of Sheila Bramlitt ("Bramlitt Affidavit") ¶¶ 2-3, *attached to* Appendix to Motion at 15-16. Scaff and Bramlitt hired Jones as a Loss Prevention Officer. Bramlitt Affidavit ¶ 3; Scaff Affidavit ¶ 3.

A First Horizon Loss Prevention Officer investigates allegations of fraud and other suspicious activities. Scaff Affidavit ¶ 5. These allegations are typically made by filing an Electronic Incident Report ("EIR"). *Id*. Once an EIR is filed, a Loss Prevention Officer is assigned to it. *Id*. ¶ 6. Within 24 hours of this assignment, the Loss Prevention Officer must determine the nature of the alleged offense, whether there is a suspect, whether the incident is inside or outside the company, the company's potential exposure, and whether the alleged offense is "reportable." *Id*. EIR investigations may require a Loss Prevention Officer to gather relevant

documentation, interview parties, witnesses, and suspects. *Id*. ¶ 9. This information must be completely documented in First Horizon's electronic case management system. *Id*. If the alleged offense is reportable, a Suspicious Activity Report ("SAR") must be filed with the United States Department of the Treasury ("Department of the Treasury"). *Id*. ¶ 7. The SAR must completed within five days. *Id*. ¶ 8. Under penalty of law, a finalized SAR must then be submitted to the Financial Crimes Enforcement Network of the Department of the Treasury within thirty days of the initial detection of facts constituting the basis for filing the SAR. *Id*.

Jones contends that in the fall of 2005, on at least three occasions, Scaff made "meddlesome, harassing, and discriminatory comments" to Jones about her professional interactions with Don McMillan, a fellow African-American employee. Complaint ¶ 18.

Within the first year of Jones's employment, Scaff noticed "significant problems" with Jones's job performance. Scaff Affidavit ¶ 11. Scaff maintains that Jones's documentation contained "numerous errors and omissions." *Id*. Jones's "availability and accessibility were a constant issue as well." *Id*. As a result, on February 7, 2006, Scaff counseled Jones on how to improve her job performance and documented this meeting in writing. *Id*. ¶ 13; *see also* Memorandum dated February 7, 2006, *attached to* Appendix to Motion at 98-99. In that meeting, Scaff asked Jones to prepare a written plan to correct the "identified deficiencies" by

February 13, 2006.  Scaff Affidavit ¶ 13.  She did so but submitted it a day late.  *Id*.; *see also* Memorandum dated February 1, 2007 [sic], *attached to* Appendix to Motion at 103-04.  Scaff advised Jones that further unsatisfactory job performance could lead to job termination.  Scaff Affidavit ¶ 13.  Jones maintains that Scaff criticized her for not knowing the names of members of executive team members in her area but asserts that Caucasian male investigators were not required to know these names.  Complaint ¶ 19.  Jones avers that Scaff also reprimanded Jones for working at home without notice but that her Caucasian male counterparts were not disciplined for working from home.  *Id*. ¶ 20.

On February 8, 2006, Faye Lott ("Lott"), First Horizon's Employee Services Relationship Manager, spoke to Jones about the counseling session with Scaff.  Affidavit of Faye Lott ("Lott Affidavit") ¶¶ 1, 2, *attached to* Appendix to Motion at 25-27.  During that meeting, Jones did not make an allegation of discrimination or retaliation.  *Id*. ¶ 2.  However, Jones maintains that in mid- to late February, she reported Scaff's "discriminatory conduct" to Lott.  Complaint ¶ 22.  After her report to Lott, Jones received a negative performance evaluation.  *Id*.

In April 2006, Jones received an overall performance score of 2.28 on a scale of 1 (exceptional) to 4 (below competent performer) on her annual review.  Scaff Affidavit ¶ 14.  Scaff noted on Jones's performance evaluation that she "needed to improve her skills in terms of gathering supporting evidence and documentation

during investigations, as well as significantly improve the timeliness and quality of her 'SAR' reports." *Id*.

During late June 2006, Jones informed Scaff that she wished to transfer to First Horizon's Asset Recovery Department and to be promoted to an Asset Recovery Analyst. Complaint ¶ 23. When Jones was on vacation, Scaff reportedly made negative comments about Jones to Dean McGee ("McGee"), Vice President in the Asset Recovery Department. *Id*. After Jones returned from vacation, McGee would not return her pone calls or e-mails, and she did not get the job. *Id*. Jones claims that several other Caucasian males had successfully transferred out of her department "without interference from Scaff." *Id*.

On July 6, 2006, Scaff met with Lott and Jones to give Jones a written warning "because her performance remained at an unacceptable level." Scaff Affidavit ¶ 15; Lott Affidavit ¶ 3; *see also* Memorandum dated July 6, 2006, *attached to* Appendix to Motion at 106-07. Specifically, Scaff addressed Jones's "judgment and decision-making flaws, errors and omissions in her case documentation, and her repeated failure to meet the deadlines relating to the submission of 'SARs.'" Scaff Affidavit ¶ 16. Scaff also told Jones that further disciplinary action could result in the termination of her employment. *Id*. ¶ 17.

On July 7, 2006, Jones attended a weekly departmental meeting by conference call rather than in person because she was working on a SAR. Complaint ¶ 25. Scaff

scolded Jones on the phone in the presence of her coworkers for not attending the meeting and demanded that Jones come to his office for the meeting. *Id*. A Caucasian female was not present at the meeting due to work on a SAR and was not reprimanded. *Id*.

On July 10, 2006, Jones failed to submit her monthly summary of investigative matters and had errors in a SAR she completed. Scaff Affidavit ¶ 18; *see also* E-Mail dated July 10, 2006, *attached to* Appendix to Motion at 108. On that same date, Jones wrote Scaff a rebuttal memorandum. Scaff Affidavit ¶ 19; Lott Affidavit ¶ 4; *see also* Memorandum dated July 10, 2006 ("Rebuttal Memo"), *attached to* Appendix to Motion at 109-12. In that rebuttal memorandum, she claimed that Scaff discriminated against her on the basis of sex and race and that he retaliated against her for requesting a transfer. Lott Affidavit ¶ 4. Lott subsequently investigated Jones's allegations, including a review with Scaff of Jones's rebuttal memorandum, but she found no evidence of discrimination or retaliation. *Id*. ¶¶ 5, 6.

On July 19, 2006, Lott and Scaff met with Jones to discuss Jones's rebuttal letter. Scaff Affidavit ¶ 21; Lott Affidavit ¶ 7. During the meeting, Jones told Scaff that she wanted to continue to work on her job performance with him. Scaff Affidavit ¶ 21. At the end of that meeting, Jones was not feeling well and went home. *Id*. ¶ 22. Jones was then approved for short term disability leave for late July, August, and most of September. Lott Affidavit ¶ 8; Complaint ¶ 27. On September 21,

2006, Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Charge of Discrimination, *attached to* Appendix to Motion at 114-15. On September 27, 2006, the EEOC issued to Jones a Notice of Right to Sue. *See* Dismissal and Notice of Rights, *attached to* Appendix to Motion at 116. On September 26, 2006, Jones returned to work. Scaff Affidavit ¶ 23; Complaint ¶ 29. Scaff noticed that Jones's job performance problems continued. Scaff Affidavit ¶¶ 23-25.

On October 31, 2006, in violation of company procedures, Jones interviewed an employee without first compiling evidence to justify the interview. *Id*. ¶ 26. On November 1, 2006, Scaff, with approval from Lott and Bramlitt, decided to terminate Jones's employment due to "her continuing unsatisfactory performance, including her failure to follow proper investigative procedures despite prior warnings." Scaff Affidavit ¶ 28; *see also* Lott Affidavit ¶ 9; Bramlitt Affidavit ¶ 4. At the time of this decision, Scaff and Bramlitt did not know that Jones had filed a charge of discrimination with the EEOC. Scaff Affidavit ¶ 29; Lott Affidavit ¶ 10; Bramlitt Affidavit ¶ 5.

On December 12, 2006, Jones filed a second charge of discrimination with the EEOC. *See* Charge of Discrimination, *attached to* Appendix to Motion at 117. On April 11, 2007, the EEOC issued to Jones a Notice of Right to Sue. *See* Dismissal and Notice of Rights, *attached to* Appendix to Motion at 118.

On August 23, 2007, Jones filed a third charge of discrimination with the EEOC. *See* Charge of Discrimination, *attached to* Complaint as Exhibit D. On October 30, 2007, the EEOC issued to Jones a Notice of Right to Sue. *See* Dismissal and Notice of Rights, *attached to* Complaint as Exhibit E.

Jones filed this case on June 26, 2007. Her complaint alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and race discrimination in violation of 42 U.S.C. § 1981 (""§ 1981"). *See generally* Complaint.

## II. ANALYSIS

### A. Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The movants make such a showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal there are no genuine material fact

---

[1] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

issues.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movants make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Summary judgment in favor of the movants is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

B. <u>Jones's Claims</u>

1. *Race Discrimination*

The same evidentiary standards apply to claims under Title VII as apply to claims under § 1981. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Therefore, evidence that establishes a *prima facie* case of racial discrimination under Title VII will also establish a *prima facie* case of discrimination under § 1981. Likewise, evidence of a legitimate, non-discriminatory motive for the employment action will defeat both a Title VII claim and a § 1981 claim. Because the same standards apply to the plaintiff's causes of action under both statutes, see *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996), the court will only directly address the plaintiff's Title VII allegations.

This court applies the burden shifting framework utilized by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to analyze Jones's claims of race discrimination in employment. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Since the record in this case contains no direct evidence of race discrimination,[2] a three-step analysis applies. See *Portis v. First National Bank of New*

---

[2] "Direct evidence" in the employment discrimination context is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (5th
(continued...)

*Albany, MS*, 34 F.3d 325, 328 (5th Cir. 1994); see also *St. Mary's*, 509 U.S. at 506-11; *Burdine*, 450 U.S. at 252-56; *McDonnell Douglas*, 411 U.S. at 802-05. In the first step, the plaintiff must establish a *prima facie* case of discrimination. *Portis*, 34 F.3d at 328 n.7. If the plaintiff presents a *prima facie* case, a presumption of discrimination arises. *St. Mary's*, 509 U.S. at 506. At the second step, the defendants can rebut this presumption of discrimination by offering a legitimate, nondiscriminatory reason for the employment decision of which the plaintiff complains. *Id*. at 507. If the defendants satisfy this burden of production, the plaintiff's *prima facie* case dissolves, *id.*, and the case proceeds to the third step of the analysis. *Id*. At this third stage, the burden is on the plaintiff to prove that the reasons offered by the defendants are pretexts for race discrimination. *Id*. at 507-08.

When the analysis has proceeded to this third step, the plaintiff -- to avoid summary judgment -- must produce evidence from which a reasonable factfinder could find "that the employer's reasons were not the true reason for the employment decision *and* that unlawful discrimination was." *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (emphasis in original). Accord *Moore v. Eli Lilly and Company*, 802 F. Supp. 1468, 1471-74 (N.D. Tex. 1992), *aff'd*, 990 F.2d 812, 816

---

[2](...continued)
Cir. 1995) (citing *Brown v. East Mississippi Electric Power Association*, 989 F.2d 858, 861 (5th Cir. 1993)).

n.24 (5th Cir.), *cert. denied*, 510 U.S. 976 (1993); *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993).  See *St. Mary's*, 509 U.S. at 507-08.

### a. *Prima Facie* Case

To establish a *prima facie* case of race discrimination, Jones must show (1) that she was a member of a protected group, African-American; (2) that she was qualified for her position; (3) that she was dismissed or suffered an adverse employment action; and (4) that the defendants sought to replace her with a similarly qualified white employee.  *E.g.*, *Ward v. Bechtel Corporation*, 102 F.3d 199, 202 (5th Cir. 1997).  That is, Jones must prove that "an employee outside of h[er] protected class received better treatment on circumstances nearly identical to h[ers]."  *Bowers v. Principi*, 70 Fed. Appx. 157, 2003 WL 21554567, at *1 (5th Cir. July 3, 2003) (per curiam) (citation omitted).  First Horizon asserts that Jones cannot establish a *prima facie* case of race discrimination.  Memorandum in Support of Defendants' Motion for Summary Judgment ("Motion") at 22-26.  For the purposes of this motion, the court will assume *arguendo* that Jones can satisfy the first three elements of her *prima facie* case.  First Horizon contends, however, that Jones's *prima facie* case fails with respect to the third or fourth element.  *Id*. at 23.

The court will assume, however, for the purposes of this motion, that Jones has established a *prima facie* case of race discrimination.  The question then becomes

whether First Horizon has offered a legitimate, nondiscriminatory reason for Jones's discharge and whether Jones can satisfy her pretext burden.

### b. Nondiscriminatory Reason

First Horizon contends that it has established that Jones was terminated for legitimate, non-discriminatory reasons. Motion at 27. To satisfy its burden of production, First Horizon must merely produce evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action about which the plaintiff complains. See *St. Mary's*, 509 U.S. at 507, 509 (at this stage of analysis, credibility determinations are not warranted as burden-of-production determination necessarily precedes credibility assessment stage); see also *Dailey v. Jones & Jones Consumer Products, Inc.*, 850 F. Supp. 549, 553 n.2 (N.D. Tex. 1994) ("It is important to note that whether a defendant carries [its] burden of production involves no credibility assessment, '[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage.'") (emphasis in original, quoting *St. Mary's*, 509 U.S. at 509), *aff'd*, 99 F.3d 1136 (5th Cir. 1996) (table); *Thornton v. Neiman Marcus*, 850 F. Supp. 538, 543 (N.D. Tex. 1994) ("The Court may not assess the credibility of the stated reason.").

First Horizon has submitted evidence that termination of Jones's employment was due to her continued unsatisfactory performance. Thus, First Horizon has produced a sufficient nondiscriminatory reasons for its termination of Jones's

whether First Horizon has offered a legitimate, nondiscriminatory reason for Jones's discharge and whether Jones can satisfy her pretext burden.

### b. Nondiscriminatory Reason

First Horizon contends that it has established that Jones was terminated for legitimate, non-discriminatory reasons. Motion at 27. To satisfy its burden of production, First Horizon must merely produce evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action about which the plaintiff complains. See *St. Mary's*, 509 U.S. at 507, 509 (at this stage of analysis, credibility determinations are not warranted as burden-of-production determination necessarily precedes credibility assessment stage); see also *Dailey v. Jones & Jones Consumer Products, Inc.*, 850 F. Supp. 549, 553 n.2 (N.D. Tex. 1994) ("It is important to note that whether a defendant carries [its] burden of production involves no credibility assessment, '[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage.'") (emphasis in original, quoting *St. Mary's*, 509 U.S. at 509), *aff'd*, 99 F.3d 1136 (5th Cir. 1996) (table); *Thornton v. Neiman Marcus*, 850 F. Supp. 538, 543 (N.D. Tex. 1994) ("The Court may not assess the credibility of the stated reason.").

First Horizon has submitted evidence that termination of Jones's employment was due to her continued unsatisfactory performance. Thus, First Horizon has produced a sufficient nondiscriminatory reasons for its termination of Jones's

employment.  See *Wright v. Southwest Bank*, 648 F.2d 266, 267 (5th Cir. 1981).
Accordingly, upon review of the motion, the response, and the evidence in the record, the court concludes that First Horizon has carried its burden of articulating a legitimate, nondiscriminatory reason for terminating Jones's employment.

c.  Pretext Burden

When the analysis has proceeded to this third step, Jones -- to avoid summary judgment -- must produce evidence from which a reasonable factfinder could find that First Horizon's stated reason was not the true reason for the employment decision *and* that unlawful discrimination was.  *Bodenheimer*, 5 F.3d at 957 (emphasis in original).  Accord *Moore*, 802 F. Supp. at 1471-74; *Waggoner*, 987 F.2d at 1166; see *St. Mary's*, 509 U.S. at 515-16.  To show pretext, a plaintiff must do more than negate the defendant's proffered reasons for the employment decision.  See *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 371 (5th Cir. 1997).

In *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996) (en banc), the Fifth Circuit set forth the following standard regarding proof of pretext:

> [A] jury issue will be presented and a plaintiff can avoid
> summary judgment . . . if the evidence taken as a whole
> (1) creates a fact issue as to whether each of the employer's
> stated reasons was what actually motivated the employer
> and (2) creates a reasonable inference that [race] was a
> determinative factor in the actions of which plaintiff
> complains.  The employer, of course, will be entitled to
> summary judgment if the evidence taken as a whole would
> not allow a jury to infer that the actual reason for the
> discharge was discriminatory.

*Id*. at 994; see also *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181-83 (5th Cir. 1996) (quoting *Rhodes* standard and applying it in Title VII summary judgment context). "*Rhodes* makes clear that a plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent in order to avoid summary judgment." *Grimes v. Texas Department of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996).

After reviewing Jones's response to First Horizon's motion for summary judgment, the court concludes that she has failed to raise a genuine issue of material fact that First Horizon's reason for discharging her is a mere pretext for race discrimination. Even if it is assumed, *arguendo*, that Jones has presented a *prima facie* case, her claim would fail for want of evidence from which a reasonable jury could conclude that the legitimate reasons offered by First Horizon were pretexts for race discrimination. Jones offers nothing to show that an impermissible racial animus motivated First Horizon. Absent such evidence, a verdict in favor of Jones on her claims of race discrimination would be insupportable as a matter of law. See *Swanson v. General Services Administration*, 110 F.3d 1180, 1185 (5th Cir.) (reversing and rendering a jury verdict where the plaintiff offered no evidence connecting the defendant's actions to race), *cert. denied*, 522 U.S. 948 (1997).

Jones incorrectly asserts that the comment by Scaff that "I am not going to listen to rap music all the way there" supports a clear inference of discrimination. Memorandum in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment at 24. In keeping with the summary judgment standard, the court will assume that the comment was made. Still, it does not -- on its face -- evidence an intent to discriminate on the basis of race. The comment is -- at best -- no more than a "stray remark," and "'stray remarks' alone will not overcome overwhelming evidence corroborating defendants' non-discriminatory rationale." *Sreeram v. Louisiana State University Medical Center-Shreveport*, 188 F.3d 314, 320 (5th Cir. 1999); see also *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996); *Waggoner*, 987 F.2d at 1166.

The Fifth Circuit has held that such remarks may be sufficient evidence of discrimination if the comments are "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the termination[]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999) (citations omitted). In this case, Jones has presented no evidence that the comment was proximate in time to Jones's termination. Nor has it been shown that the comment makes any reference to the employment decision at issue -- First Horizon's decision to terminate Jones's employment. Jones has failed to

demonstrate that the comment she ascribes to Scaff is evidence of pretext. This is especially so "where, as here, the evidence overwhelmingly supports defendants' proffered non-discriminatory rationale." *Sreeram*, 188 F.3d at 320 (citing *Brown*, 82 F.3d at 656).

In sum, the most favorable view of the evidence suggests that Jones was an African-American who suffered adverse employment actions, not that she suffered adverse employment actions *because* she was an African-American. Even when viewed in a light most favorable to her, Jones's summary judgment evidence fails to create an issue of fact that her discharge was motivated by her race. Because she will bear the burden of proof at trial on these elements of her claim, this lack of evidence is fatal. See *Celotex*, 477 U.S. at 322-23. Accordingly, First Horizon's motion for summary judgment on Jones's race discrimination claim is granted.

2. *Retaliation*

As with Jones's claims of discrete instances of race discrimination, the court applies the *McDonnell Douglas/Burdine/St. Mary's* burden shifting framework to Jones's claims of retaliation. See *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). To establish a *prima facie* case of unlawful retaliation under Title VII, Jones must demonstrate that (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse

employment action. See *Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir. 1998); *Sherrod*, 132 F.3d at 1122 n.8; *Long*, 88 F.3d at 304; *Collins v. Baptist Memorial Geriatric Center*, 937 F.2d 190, 193 (5th Cir. 1991), *cert. denied*, 502 U.S. 1072 (1992). The causal connection required is cause-in-fact or "but for" causation. *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984).

If it is assumed *arguendo* that Jones has adduced sufficient evidence to establish a *prima facie* case of retaliation, the court must next address First Horizon's proffered explanation and Jones's ultimate proof. See, *e.g.*, *Long*, 88 F.3d at 305. First Horizon explains Jones's termination by pointing to evidence that Jones had unsatisfactory job performance. To avoid summary judgment, Jones must rebut this legitimate explanation by providing evidence from which a reasonable jury could conclude that unlawful retaliation was the "cause-in-fact" of her injury. See *Sherrod*, 132 F.3d at 1123.

Upon review of the evidence, the court concludes that Jones has failed to provide proof from which a reasonable jury could find that retaliation was the cause-in-fact[3] of her discharge. Even if it is assumed *arguendo* that Jones engaged in protected activity, she has submitted no evidence challenging First Horizon's

---

[3] The "cause-in-fact" analysis of pretext requires proof of a significantly stronger relationship between the adverse employment action and the alleged retaliation than is required to show a "causal link" for the plaintiff's *prima facie* case. *Sherrod*, 132 F.3d at 1122 n.8; *Long*, 88 F.3d at 305 n.4.

legitimate, nondiscriminatory reason for discharging her, *i.e.*, unsatisfactory job performance. Jones's arguments provide absolutely no evidence that First Horizon retaliated against her for the charge she filed with the EEOC. Moreover, First Horizon has provided uncontroverted evidence that none of the individuals who made the decision to terminate Jones's employment was influenced by Jones's charge of discrimination. *See* Scaff Affidavit ¶ 29; Lott Affidavit ¶ 10; Bramlitt Affidavit ¶ 5. Without evidence showing that Jones would not have been discharged "but for" her complaints of discrimination, see *Sherrod*, 132 F.3d at 1122; *Long*, 88 F.3d at 305 n.4, First Horizon is entitled to summary judgment on Jones's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, First Horizon's motion for summary judgment is **GRANTED**. Judgment will be entered for the defendants.

**SO ORDERED**.

August 13, 2008.

	*C. Joe Fish*
	A. JOE FISH
	**Senior United States District Judge**